U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAY 2 7 2021

CLERK, U.S. DISTRICT COURT
By_____
Deputy

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| **LORENZO ALLEN THOMAS,** | ) | |
| **Plaintiff,** | ) | |
| **Vs.** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **MICHEAL CAGEL,** | ) | |
| **Defendant(s)** | ) | **JURY TRIAL DEMAND** |
| | ) | |
| **DAVID HAFER,** | ) | **4-21Cv-692╌P** |
| **Defendant(s)** | ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

COMES NOW, LORENZO ALLEN THOMAS files this complaint by pro se and through in forma pauperis, by doing so plaintiff states as follows:

## SUMMARY

In August 2019, Lorenzo Thomas was illegally arrested and pepper sprayed in retaliation for filming and protesting the misconduct and the mistreatment of the homeless living downtown by the Fort Worth Police Department (FWPD). The City of Fort Worth was creating city ordinances specifically to target the homeless, and used the FWPD to carry out such acts and violations.Thomas was approached by officer Hafer, Garcia, and Sgt. Cagel one morning claimed that Thomas had an out -of -state warrant out of Arkansa for possession of marijuna. Although the

1

officers knew that Thomas had said warrant; due to the recent arrest made by Cagel and Hafer, they claimed that the State of Texas was going to float the bill to extradite Thomas although Arkansa authorities declined to extradire Thomas. Thomas states that the officers' assertion that they were ordered to transport him to Arkansa was fabricated and made in an attempt to circumvent previous retaliation and harassment by said officers for Thomas' protesting.

Thomas states that although the officers approached him claiming they were instructed to find him and arrest Thomas, 27 minutes of the detainment was recorded by Thomas' girlfriend, before he was transported. Rather than Cagel, Hafer and Garcia transporting Thomas to the jail; which was 2 streets behind the library where the arrest took place, instead officers transported him 5 to 8 blocks away from the jail to a police substation. Once taken into the substation, Cagel began winking at Thomas, telling him that (they) were taking him to Arkansa. Noticing that it wasn't normal for officers to take inmates to a substation prior to being transported to the jail, and that officers claiming they were gonna extradite a prisoner before an extradition hearing, Thomas felt he was at imminent risk of serious harm or loss of life. The officers changed Thomas' handcuffs and put him in a patrol vehicle that wasn't logged in as in service. Patrol vehicles that are not in use, are stored at police substations. Using a patrol vehicle that isn't signed out, would allow an officer to travel without being detected or his location being

tracked. Thomas states that once the officers attempted to proceed with the transport, he began to resist, by hitting his head on the divider glass in the patrol vehicle in an attempt that Thomas would cause injuries to himself and would require the officers to transport him to the hospital. Thomas states that he would resist each time the officers would attempt to drive off. In an attempt to prevent Thomas from resisting, his legs were tied and anchored to the vehicle's floorboard. Sgt. Cagel instructed the officers that if Thomas continued to resist, for the officers to spray him with mace. The officers then tried to drive off, but Thomas began resisting again. Officer Hafer stopped the vehicle, opened Thomas' door and sprayed him in the face with pepper spray. Officer Hafer and Garcia attempted to jerk Thomas from the back of the patrol car but because his legs were still anchored to the floorboard.

Thomas states that he was asthmetic, and because of the chemical agents and the officers force used to remove Thomas from the patrol car, he became unconscious and CPR was required in order to revive Thomas. Thomas regained consciousness and was transported to John Peter Smith Memorial. Thomas states that a visual examination was conducted, however, wasn't offered decontamination after the use of chemical agents but instead cleared to be transported to the jail. Thomas was booked in the jail and was housed on the mental health floor. For three days, Thomas denied decontamination, clothes and subjecting to pain due to

the chemical agents that made contact to his genitals. Thomas was released to the general population and the resisting arrest charges were dropped and Thomas was released from jail.

Thomas states that after being released, he still believed that he was in imminent risk of harm by the officers, Thomas moved to Waxahachie,Texas. Thomas returned to downtown Fort Worth almost 6 months later. In August 2020, Thomas was walking downtown when a police truck passed him and turned around. The patrol truck pulled up beside Thomas, rolled his passenger window down and asked him if he was Lorenzo Thomas and what was he doing back downtown, while exiting his vehicle. Thomas noticed that it was Sgt. Cagle. In response, Thomas stated that he was back in Ft.Worth because he lived there. In response, Cagel told Thomas that they were gonna take another ride and for him not to run. Remembering the last altercation between Cagel and Thomas, he believed that he was in imminent risk to harm and fled. Shortly after, Thomas was apprehended and taken back where he ran from Sgt. Cagel. Thomas states that Cagle was so happy that he was apprehended that once back at the scene, Cagle slapped Thomas in the chest and stated: "Welcome back". Thomas states that because of running and being hit in the chest by Cagel, he began to have difficulty breathing along with chest pains and requested medical attention. The officers refused his request stating that Thomas was lying about his need for medical

attention and that he wasn't going to use medical attention to circumvent the arrest. Thomas was transported to the jail and was later released.

## I.

## PARTIES

1. Plaintiff Lorenzo Allen Thomas is now a resident of the State of Ohio and was a resident of Fort Worth, Texas during the subject matter.

2. Defendant Mike Cagel is an individual residing in Fort Worth, Tarrant County, Texas and is a police officer with the City of Fort Worth Police Department and may be served at his place of employment at the Fort Worth Police Department located at 500 Felix Street, Fort Worth, Texas or wherever he may be found. Defendant Cagel is being sued in his individual and official capacity.

3. Defendant David Hafer is an individual residing in Fort Worth, Tarrant County, Texas and is a police officer with the City of Fort Worth Police Department and may be served at his place of employment at the Fort Worth Police Department located at 500 Felix Street, Fort Worth, Texas or wherever he may be found. Defendant Hafer is being sued in his individual and official capacity.

## II

## JURISDICTION AND VENUE

4.    The Court has original jurisdiction over this action pursuant to 28 U.S.C.

1331 and 1343 since Plaintiff is suing for relief under 42 U.S.C. 1983.

5.    Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. 1391

because the Defendants reside in the Northern District of Texas and all of the

causes of action accrued in the Northern District of Texas.


## III

## FACTS AND ALLEGATIONS

6.    On or about August 15, 2019, Plaintiff Lorenzo Allen Thomas had his

constitutional rights violated when Defendant Officers Hafer, Cagel and Garcia of

the Fort Worth Police Department unlawfully arrested Mr. Thomas, retaliated and

used excessive force against him.

7.    Following the retaliation, illegal arrest, and excessive force, Defendant's

Hafer, Cagel, Garcia, and the Tarrant County Jail officers were deliberately

indifferent to Mr. Thomas's clear and obvious medical needs.

8.    At all times relevant to this lawsuit Defendant's Hafer, Cagel, and Garcia

were acting under color of law.

9.    The interaction between Mr. Thomas and Defendant's Hafer, Cagel, and

Garcia were recorded by multiple body cameras, dash cams, and cell phones.

10.   In 2019 Thomas began protesting the mistreatment of the homeless living in the downtown Fort Worth area by the police and businesses in the area.

11.   It will become apparent that Defendant's Hafer, Cagel, and Garcia was retaliating against Mr. Thomas, a African American male, attempted to use an out-of-state warrant to circumvent the illegal arrest, however it would be determined later that Thomas did not resist arrest due the dismissal of the resisting arrest charges filed in connection to the August 15, 2019 interaction.

12.   It will become apparent that Defendant's Hafer, Cagel, and Garcia action were based on the August 8th and 12th interaction with Mr. Thomas and the defendant's.

13.   On or about August 15, 2019, Defendant's approached Mr. Thomas claiming that they were there to determine whether Mr. Thomas had a out-of-state warrant, although the defendant's had interactions with Mr. Thomas days prior in which the defendant's were aware of the Arkansa out-of-state warrant and already knew that Arkansa didn't have intentions of extraditing Mr. Thomas.

14. During the interaction Mr. Thomas's girlfriend and another homeless woman were recording the defendant's. Defendant Cagel stated to Thomas's girlfriend at one point that if she continued to complain about the illegal arrest; Defendants Cagel stated; " Keep it up you will be put in this too" in which Thomas continued to shout that the officers were retaliating against him. Defendant's alleged that they

hadn't seen the warrant and were detaining Mr. Thomas until further instructions. Following 27 minutes of Mr. Thomas being detained, he was finally informed that he was under arrest.

15.     Although the arrest took place in front of the public library; which was 2 streets behind the jail, Mr. Thomas was taken at least 10 blocks from the jail. Thomas was taken to a police substation. In the police substation, Thomas handcuffs were removed and applied with a different set. While doing this, Cagel kept winking and smirking at Mr. Thomas and continued to state that "they" were taking Thomas to Arkansa themselves.

16.     Noticing that these types of procedures were not normal, and because of the previous interactions with Mr. Thomas and the defendant's, Thomas feared that he was at a substantial risk of being harmed or a substantial risk to loss of life so Mr. Thomas began hitting his head on the cage in an attempt to cause a scene so the bystanders would witness their actions and possibly stop their illegal actions.

17.     Defendant Hafer stopped the patrol car and got in the backseat with Mr. Thomas began holding him in a bear hug hold. Defendant Hafer tied Mr. Thomas's legs together and attempted to drive off. Mr. Thomas continued to create a scene. This time Mr. Thomas states that defendant Cagel instructed Hafer that if Mr. Thomas continued to spray him. In response, still fearing risk of harm or loss of

life, Mr. Thomas continued to create a scene. Defendant Hafer stopped the patrol car, opened the rear door and sprayed Thomas in the face with mace.

18.    At that point, defendant Hafer and Garcia violently jerked Mr. Thomas from the patrol car, but were unsuccessful due to Thomas's feet being tied and anchored to the floorboard of the patrol car. Once Mr. Thomas' feet were free, due to asthma Thomas began to have complications which required the use of CPR. Once revived, Thomas was transported to John Peter Smith Medical Hospital.

19.    Thomas states while at the hospital, he remembered officers stating that nothing was wrong with him. Thomas was discharged from the hospital and transported to the Tarrant County Jail. Thomas was arrested for resisting arrest. At trial Thomas states that the resisting arrest charges were dropped and he was released. Thomas states that at no time was the alleged out-of-state warrant discussed at the resisting arrest hearings, nor any of the other arrests made by the defendant's although the out-of-state warrant was the reasoning for each arrest.

20.    Thomas states that after he was released from jail he moved to Waxahachie, Texas and started a job with Triple T. Amusement Park. Thomas worked there for almost 6 months and returned around April 2020. Thomas doesnt remember the actual date but knows it was April due to the fact it was his birth month.

21.    Thomas states that in April 2020 him and his girlfriend returned to downtown Ft. Worth being homeless again. Thomas states within a week of his

return, Thomas was walking downtown towards the Greyhound Bus Station. Going under a railroad underpass, Thomas noticed a police truck drive by him going the opposite direction.

22.    Fearing that the officer that passed him might be one of the officers that had attacked him, Thomas states that he waited before he turned around to see if the officer kept driving or was turning around. Thomas states that when he peeked over his shoulder, he noticed the officer was coming back his way. Once the officer reached the underpass, he rolled his passenger window down and yelled "Hey….Lorenzo Thomas?". When Thomas acknowledged that he was in fact that person, at that point Thomas noticed it was Sgt Cagel.

23.    Thomas states at that point Sgt. Cagel asked Thomas why he was back in Ft.Worth. In response, Thomas told Sgt Cagel: "Because [I] live here". Sgt Cagle exited the police truck and stated: "Well i guess we're going to take another ride", and told Thomas not to run. Thomas states that when Sgt Cagel told him not to run, Thomas paused for a second not wanting to run from the police, but feared what would happen if he went on another ride with Sgt. Cagel.

24.    Thomas states that he took off running. Thomas states that he ran back towards his campsite in an attempt to reach his girlfriend and other people who could witness any misconduct. However, Thomas states that when he reached the

campsite his girlfriend wasn't there. Thomas saw that he had nowhere to go and he was surrounded, Thomas turned around, kneeled down with his hands up.

25.    Thomas states that once he was apprehended, Thomas was taken back to Sgt. Cagel's patrol car. Thomas states that Sgt. Cagel opened the back of the cruiser and slipped Thomas in the chest stating: "Welcome back". Thomas states that while being transported to Tarrant County Jail, Thomas requested medical treatment because he was having chest pains after being slapped in the chest by Sgt Cagel.

26.    Thomas states that the officer's transporting him laughed and stated that they weren't playing that game. Thomas could only infer that the officer was talking about the pepper spray incident with Sgt. Cagel and Hafer, when the officer told nurses at the hospital that CPR was really needed that Thomas was faking.

27.    Thomas states that the transport officers stated that the ambulance would be dispatched to the jail. Both of the transport officers were involved or at the August 2019 pepper spray incident with Sgt. CAgel and Hafer.

28.    Thomas was transported to jail, charged with evading arrest and railroad violation. The railroad violation was when Thomas ran from Sgt. Cagel.

## IV.

## CAUSE OF ACTION

## Count One

## Excessive Force

## Violation of the Fourth Amendment Pursuant to 42 U.S.C. sec. 1983 Against Defendants Cagel and Hafer

29.    Mr. Thomas reapers and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

30.    Acting under the color of law, Defendants Cagle and Hafer deprived Mr. Thomas of the rights and privileges secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

31.    Mr. Thomas brings this cause of action pursuant to 42 U.S.C. sec. 1983

32.    The amount of force used by Hafer and Garcia against Mr. Thomas as described above, specifically but not limited to, when Defendant Hafer and Cagle grabbed and forcibly pulled his body out the patrol car and spraying Thomas in the face with pepper spray, was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Plaintiff.

33.    A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and the excessiveness was clearly unreasonable.

34.    Although officers may need to use "physical force... to effectuate [a] suspect's compliance" when he refuses to comply with commands during a stop, the officers still must assess "the relationship between the need and the amount of force used." *Newman v. Guedry, 703 F3d 757, 763 (5th Cir 2012); quoting Deville v. Marcanted, 567 F.3d 156, 167 (5th Cir 2009).*

35.    Where an individual's conduct amounts to mere "passive resistance," use of force is not justified.  *Trammell v. Fruge,* 868 F.3d 332, 341 (5th Cir 2017).

36.    Defendant Hafer 's use of force by spraying Mr. Thomas in the face and eyes was greater than was necessary to arrest Mr. Thomas, as Mr. Thomas was not resisting but simply attempting to protect himself from the illegal arrest and excessive uses of force by Hafer, Cagel and Garcia.

37. Mr. Thomas was reasonable in his belief that he needed to protect himself against Defendants Cagle, Hafer, and Garcia's uses of excessive force, and in response, Mr. Thomas simply attempted to refrain from being unnecessarily assaulted and illegally arrested.

38.    A reasonable officer would know that these uses of force were clearly excessive when engaging with citizens such as Mr. Thomas, who was not threatening any officers or other person, was not suspected of committing any crime and the fictitious crime they were using to arrest him was a warrant that the out-of-state authorities already advised the defendants more than once days prior;

they declined to extradite the plaintiff. Defendant Cagel, Hafer, and others were using an out of state warrant; that they knew the state was declining to extradite, to circumvent their illegal retaliation conduct for Mr. Thomas filmed the defendants and other officers performing police misconduct.

39.    As a direct result of the force used against him by Defendants Cagel, Hafer, And others, Mr. Thomas suffered physical injury, pain and mental anguish.

40.    Defendant Cagel, Hafer, Garcia, and others caused Mr. Thomas to suffer extreme pain and suffering by burning his eyes, face, and testicles with OC spray.

41.    Defendant Cagel , Hafer, and Garcia caused Mr. Thomas to suffer pain and mental anguish due to Thomas being subjected to CPR after the use of the OC spray.

42.    These injuries were not caused by any other means.

**Count Two**

**Unlawful Arrest**

**Violation of the Fourth Amendment Pursuant to 42 U.S.C. sec. 1983 Against Defendants Cagel, Hafer, and Garcia**

43.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

44.    No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraints or interference of others, unless by clear and unquestionable authority of law. *Terry v. Ohio, 392 U.S. 1, 9 (1968)*.

45.    Defendants Cagel, Hafer, and Garcia deprived Plaintiff of his constitutionally protected right to be free from unreasonable seizures under the Fourth Amendment by falsely arresting him despite lacking probable cause that a crime had been committed.

46.    There can be no doubt that the right not to be arrested absent probable cause was clearly established at the time of Mr. Thomas's arrest.

47.    Fifth Circuit case law also clearly establishes that recording police activity is protected by the First Amendment, subject only to reasonable time, place, and manner restrictions. *Turner v. Lieutenant Driver,* 848 F.3d 678, 688 (5th Cir. 2017); U.S. Const. Amend. 1.

48.    To determine the presence or absence of probable cause, the totality of the circumstances surrounding the arrest must be considered.

49.    Defendants Cagel, Hafer, and Garcia intentionally arrested Mr. Thomas by

placing him in handcuffs, without a warrant, without consent, and without any

legal justification.

50. Mr. Thomas did not consent to his confinement and was conscious of it.

51.    Defendants Cagle, Hafer, and Garcia willfully arrested Plaintiff by

fabricating a story that their authorities sent them based on an out-of-state warrant

and they were ordered to extradite Mr. Thomas to Arkansa, although the order to

arrest Mr. Thomas was a lie.

52.    Mr. Thomas did not consent to being restrained in handcuffs or to being

restrained in the patrol vehicle.

53.    Defendants Cagel, Hafer, and Garcia did not have probable cause to support

arresting Mr. Thomas as they did not see Mr. Thomas commit a crime, as they

knew prior that the out-of-state warrant agency were specifically declining to

extradite Mr. Thomas, but because Mr. Thomas had been previously filming the

defendants they placed him under arrest anyway.

54.    In Texas, the use of force to resist an arrest is justified: (1) if, before the

actor offers any resistance, the peace officer uses or attempts to use greater force

than necessary to make the arrest or search; and (2) when and to the degree the

actor reasonably believes the force is immediately necessary to protect himself

16

against the peace officer's use or attempted use of greater force than necessary.

Tex. Penal Code Ann. sec. 9.31.

55.   Mr. Thomas was reasonable in his belief that he needed to protect himself against Defendants Cagel, Hafer, Garcia's uses of excessive force, and in response, Mr. Thomas simply attempted to refrain from being unnecessarily assaulted. Mr. Thomas did not fight the officers, but simply tried to gain attention from witnesses of what was happening; due to the uncommon procedures the officers were taking, and simply attempted to refrain from being assaulted.

56.   Additional factual support that Mr. Thomas was illegally arrested is that Mr. Thomas was released from jail and his charges for resisting arrest were dismissed only days after his illegal arrest.

58.   Defendants' did not have authority of law to arrest Mr. Thomas as they did not have a warrant or probable cause to arrest him, and no other exigent circumstances existed justifying his arrest.

59.   By knowingly and intentionally arresting Mr. Thomas without consent, without probable cause, without legal justification, and what they know prior, Defendants' deprived Mr. Thomas of his Fourth Amendment right to be free from unreasonable seizures.

60.   As a result of the illegal arrest, Mr. Thomas suffered injuries.

61.     As a result of the legal arrest, Defendants Cagel, Hafer, and Garcia deprived

Mr. THomas of his civil, constitutional and statutory rights and were liable to Mr.

Thomas under 42 U.S.C. sec. 1983.

62.     Mr. Thomas was damaged as a result of Defendants Cagel, Hafer, and

Garcia's wrongful acts as his liberty was deprived.

63.     Additionally, when making the illegal arrest, Defendants Cagel,Hafer, and

Garcia caused Mr. Thomas physical pain and suffering when they sprayed his eyes

and face with OC spray and subjecting Plaintiff to CPR after being sprayed.

**Count Three**

**Retaliatory Arrest**

**Violation of the First Amendment Pursuant to 42 U.S.C. sec. 1983 Against**

**Defendants' Cagel, Hafer, And Garcia**

64.     Plaintiff repeats and re-alleges each and every allegation contained in the

above paragraphs as if fully repeated herein.

65.     The First Amendment protects the right to record the police, subject to

reasonable time, place, and manner restrictions. *Turner v. Driver,* 848 F.3d 678, 688

(5th Cir. 2017).

66.     As a general matter the First Amendment prohibits government officials

from subjecting an individual to retaliatory actions for engaging in constitutionally

protected speech. *Hartman v. Moore,* 547 U.S. 250, 256 (2006).

67.    If an official takes adverse action against someone based on the forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provide the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim. *Nieves v. Bartlett,* 139 S.Ct. 1715, 1722 (2019).

68.    To prevail on a First Amendment retaliation claim, however, plaintiff's must plead and prove the absence of probable cause. *Roy v. City of Monroe, 950 F.3d 245, 255 (5th Cir. 2020).*

69.    The Supreme Court has recognized a "narrow" exception to this rule where the "plaintiff presents objective evidence that he was arrested [and that] otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." Id.; quoting *Nieves,* 139 S.Ct. at 1727.

70. In the instant case, neither Defendant Cagel Hafer, or Garcia had probable cause that Mr. Thomas had committed a crime at the time that Defendants came to arrest Mr. Thomas, the defendants' had been arresting Mr. Thomas for a week straight on the same alleged out-of-state warrant; each prior arrest by the same defendants was aware of the out of state warrant and the out of state agencies intentions not to extradite, but Defendants continued to use such warrant to circumvent the illegal arrest, but was a tactic used to keep Mr. Thomas out of downtown Fort Worth and protesting and filming officers misconduct.

71.    Due to a lack of probable cause to arrest Mr. Thomas, it is clear that the grounds for Defendant Cagel, Hafer, and Garcia arresting him was purely retaliatory for Mr. Thomas filming Defendants Cagel, Hafer, and Garcia and protesting against their mistreatment against the homeless living downtown.

72.    Additionally, there is objective evidence that Mr. Thomas was arrested when otherwise similarly situated individuals would not have been, as Cagel saw Thomas months later after the OC spray incident and asked Mr. Thomas why he was back in Ft.Worth, and how Cagel was going to take Thomas on another ride.

73.    It is clear that Defendants Cagel, Hafer, and Garcia subjecting Mr. Thomas to a retaliatory arrest for engaging in the constitutionally protected conduct of filming the police is a violation of Mr. Thomas First Amendment rights. *Hartman, 547 U.S. at 256; Turner, 848 F.3d at 688.*

74.    Mr. Thomas has suffered loss of liberty, mental anguish, and physical injuries as a result of this retaliatory arrest.

### Count Four

### Deliberate Indifference

### Violation of the Fourteenth Amendment Pursuant to 42 U.S.C. sec. 1983

### Against Defendants Cagel, Hafer, and Garcia

75.    A pretrial detainee alleging deliberate indifference must show that "(1) the official was 'aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, 'and (2) the official actually drew that inference." *Dyer v. Houston, 964 F.3d 374, 380 (5th Cir. 2020) (quoting Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 755 (5th Cir. 2001)).*

76.     An official's actual knowledge of a substantial risk may only be inferred if the "substantial risk" was obvious. *Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006).*

78.     Moreover, deliberate indifference cannot be inferred from " negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cty., 245 F.3d 447, 458-58 (5th Cir. 2001).*

79.     Rather, deliberate indifference is shown when a plaintiff properly alleges that officials "refused to treat him… or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino, 239 F.3d at 756 (quoting Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)).*

80.     A serious medical need is one for which treatment has been recommended or for which <u>the need is so apparent that even laymen would recognize that care is required.</u> (emphasis added) *Gobert v. Caldwell, 463 F.3d 339, 345 (5th Cir. 2006).*

81.     The requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. *Farmer v. Brennan, 611 U.S. 825, 842, 114 S.Ct. 1970, 1981, 128 L. Ed. 2d 811 (1994).*

<u>Defendants Cagel, Hafer, and Garcia were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed.</u>

82.    Each Defendant was present when Defendant Hafer aprayed Mr. Thomas in the face and eyes with OC spray.

83.    Each Defendant was present when Defendant Hafer and Garcia restrained Mr. Thomas's hands behind his back in handcuffs after being sprayed with OC spray and being required the need of CPR after being sprayed making it so that Mr. Thomas could not clean his face or eyes on his own.

84.    Each Defendant was aware that Mr. Thomas could not breath or clean his face or eyes on his own.

85.    Both Defendants were aware that OC spray caused the face and eyes to burn as Defendants left the hospital to shower and change clothes.

86.     The need to use CPR after the use of OC spray was so apparent that even a layman would recognize that care is required.

87.    Thus, each Defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed.

<u>Defendants Cagel, Hafer, and Garcia actually drew that inference.</u>

88.    Following Mr. Thomas requests for help, after being sprayed with OC spray and requiring the need of CPR, Defendants told the medics and the nurses at the hospital, "he only was sprayed with OC spray and only CPR was administered but

only one chest compression was performed," which along with the facts that

Defendant Cagel directed Defendant Hafer and Garcia to spray Mr. Thomas with

the OC spray, and understood the pain it caused as he needed to rinse the OC spray

off himself to alleviate the burning, indicates that Defendants drew the inference

that a substantial risk of serious harm existed and Mr. Thomas was in need of

immediate medical care. Especially after CPR has just been performed.

<u>Defendants Cagel, Hafer, and Garcia provided no medical attention</u>

89.    Despite being aware of facts that would give rise to the inference that a

substantial risk of serious harm existed and Mr. Thomas was in need of immediate

medical care, and each defendant actually drawing that inference, neither

Defendant provided medical attention.

90.    Instead of providing medical care, Defendants Cagel, Hafer, and Garcia

refused to provided medical attention by trying to lighten the severity by not telling

the medics and medical officials at the hospital that Mr. Thomas had stopped

breathing; due to the effects of the OC spray, and how CPR was administered

causing Mr. Thomas to start breathing again, Defendants whipped his face off and

took Mr. Thomas to jail without any test being ran due to Mr. Thomas becoming

unconscious and CPR being administered.

## V.

## **PUNITIVE DAMAGES**

91.    Mr. Thomas repeated and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

92.    When viewed objectively from the standpoint of Defendants Cagle, Hafer, and Garcia, at the time of the occurrence, said Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

93.    As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by Defendants' which was recklessly or callously indifferent to Mr. Thomas's constitutionally protected rights, Mr. Thomas is entitled to recover punitive damages in an amount within the jurisdictional limits of this Court.

## VI.

## DAMAGES

94.    Mr. Thomas repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

95.    Mr. Thomas's injuries were a foreseeable event.

96.    Mr. Thomas's injuries were directly and approximate caused by the illegal and retaliatory arrest of, the excessive force used against, and the deliberate indifference shown toward, Mr. Thomas.

97.    As a result, Mr. Thomas is entitled to recover all actual damages allowed by law. Mr. Thomas contends each of the Defendants' conduct constitutes malice, evil

intent, or reckless or callous indifference to Mr. Thomas's federally protected rights. Thus, Mr. Thomas is entitled to punitive damages against Defendants Cagel, Hafer, and Garcia.

98.     As a direct and proximate result of the occurrence which made the basis of this lawsuit, Mr. Thomas was forced to suffer:

      a.     Emotional distress, torment, and mental anguish;

      b.     Physical injuries;

      c.     Physical pain and suffering;

      d.     Deprivations of his liberty;

99.     Pursuant to 42 U.S.C. sec. 1983 and sec. 1988, Plaintiff seeks to recover, and hereby requests the award of punitive damages, reasonable attorney's fees, and costs of court.

### VII.

### ATTORNEY"S FEES

100.   If the Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. sec. 1988

### VIII.

### JURY REQUEST

101.   Plaintiff respectfully requests a jury trial.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendants, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which may show himself justly entitled.

Signed on this 24th day of May, 2021

Respectfully submitted,

LORENZO ALLEN THOMAS

Pro Se Plaintiff
11945 Cincinati-Zanesville Rd
~~11955 Chillicothe-Lancaster Rd~~
Lot 5
Stoutsville, Ohio ~~43115~~ ~~43190519~~ 43154

## Certificate of Service

I, Lorenzo Allen Thomas, hereby declare and cersify under penalties of perjury that the foregoing Plaintiff Pro Se Complaint has been served by placing same in the U.S. Mail on this ~~Date~~ 24th day of May, 2021 addressed to the following

U.S. District Court Clerk
501 West 10th Street Rm. 310
Ft. North, Texas 76102-3673

LORENZO THOMAS
Plaintiff

26

May 24, 2021

United States District Court
Norther District of Texas - Ft. North Division
Office of the Clerk
501 West 10th Street, Room 310
Ft. Worth, Texas 76102 - 3673



Re : Lorenzo Allen Thomas 42 U.S.C. § 1983
       Civil Rights Complaint.

Dear Clerk :
       Enclosed please find an original copy of
Plaintiff 42 U.S.C. § 1983 Civil Rights Complaint
along with Plaintiff Affidavit and Motion to Proceed
In Forma Pauperis, to be filed with this court.

       Thank you for your kind attention and
assistance in this matter.

                                    Respectfully submitted,

                                    Lorenzo Thomas Pro Se
                                    11945 Cincinnati Zanesville Rd
                                    Lot 5
                                    Startsville, OH 43154

LORENZO ALLEN THOMAS
11945 Cinncinoti - Zanesville Rd
Lot 5
Startsville, OH 43154

United State District Court
Northern Distist of Texas - Ft. Worth Division
Office of the Clerk
501 West 10th Street, Room 310
Fort Worth, Texas 76102 - 3673